RICHARD G. PETERS ET AL. V. MICHAEL W. GALLAGHER.

*Logging—Implied Assumpsit for Breaking Rollway—Assignment of Action.*

The presumption of an implied assumpsit may be repelled by evidence of a special agreement or of general usage or of the relations between the parties and surrounding circumstances.

Where one who is allowed by way of accommodation to bank logs on another's ground, has to put afloat the latter's logs in order to get his own out, he is not necessarily entitled to charge for the service unless it is so agreed. And to fix the relative rights and obligations of the parties a jury may consider the agreement or circumstances under which the permission was given, the extra labor and expense in managing the logs occasioned by the additional quantity, and such other facts as would fairly tend to aid them in arriving at a proper understanding of the entire case.

When parties in banking logs on the same grounds mix them indiscriminately, it is *held* that, in the absence of a special agreement or of some general usage or other controlling circumstances, each ought at the proper time to put on a force of men proportioned to his share of the logs, to break the rollway and put the logs afloat, and if either fails in that duty, he is liable to the other on an implied assumpsit for the reasonable value of the extra work done by the latter in consequence. In defense to such an action, however, he can show that from the manner in which the work was done it was of no benefit to him, or was a positive injury. And when the other has put his own logs afloat he is not bound to continue putting in the remainder, and if he does so without the owner's knowledge or authority, he cannot recover for his services, and will not be liable for any damages resulting from his not putting them all in.

In an action on an implied assumpsit for services in breaking a rollway, the entries made in the plaintiff's time-book by his foreman as to the number of 'days' work done, is admissible in connection with the plaintiff's testimony that he knows the entries to be correct.

In an action on an implied assumpsit, the plaintiff assigned all his interest in his claim to a third party after the beginning of suit. *Held* that as the assignee acquiesced in the proceedings and allowed the suit to go on in the assignor's name, the defendants could not complain, as any judgment

recovered would protect them and bar any subsequent pro-
ceedings by the assignee under the same cause of action. If
the assignment had been made before suit, the action might
still have been brought in the assignor's name, without stat-
ing that it was for the assignee's use and benefit.

Error to Manistee.   Submitted Oct. 3.   Decided Oct. 23.

ASSUMPSIT.   The facts are in the opinion.

*Bullis & Cutcheon* for plaintiffs in error.

*Dovel & Morris* for defendant in error.

MARSTON, J.   Gallagher brought an action of assumpsit
to recover the price and value of services claimed to have
been rendered by him in and about breaking a rollway of
logs, made up in part of his own logs, and in part of de-
fendants' logs.   Defendants pleaded the general issue and
attached thereto a notice of set-off, and also of recoupment.

Upon the trial of the issue the plaintiff was sworn in his
own behalf and testified that in the winter of 1874–5 he
was logging on the south branch of the Manistee river and
that he put logs into the river on defendant Peters' land:
that he had a talk with Mr. Peters about putting these logs
in on his rollway and hauling on his (Peters') roads; that
witness told Mr. Peters he would make extra turn-outs for
the teams, and would keep the roads in repair.   He also
testified that there was some talk about his putting on a
sprinkler and wetting down the road, but that he did not
agree to do this.   The defendant Peters, in reference to
this same matter, testified that he, Peters, had built the
roads and rollways at a large expense; that Gallagher said
he would put on men to keep the roads in repair, and agreed
to make extra turn-outs for the teams so that there should
be no delay to his (Peters') teams; that Gallagher agreed
to put men on the river to keep the logs clear from the
rollway, and agreed to put a sprinkler on the roads so that
they would pack; that Gallagher agreed to so use the roads
and rollway that he (Peters) should not suffer any detri-
ment from his (Gallagher's) use of the roads and rollway.

The plaintiff also testified to a conversation which he afterwards had with defendant Peters at Calkins' store about breaking the rollways, which he claimed was an express promise to pay for such extra services. This conversation Peters denied, but even without such denial, while such evidence was admissible and was proper with all the facts and circumstances in the case, to be considered by the jury, yet it was not sufficient to establish an express agreement between the parties as to breaking the rollway. The right of the plaintiff to recover, therefore, grows out of the original agreement between the parties under which the logs were banked. What such agreement was, or the extent of it, or whether it was, in the light of all the surrounding circumstances, broad enough to embrace and cover the extra work, if any, done by plaintiff in breaking this rollway and putting afloat the logs, we do not undertake to say. That agreement was not in writing, and it was and is a proper question for a jury to consider whether under that agreement, and in the light of the surrounding circumstances, the defendants would or would not be liable under the general rules we here endeavor to lay down.

The agreement entered into between parties, the usage upon the subject, or the relations existing between the parties and the surrounding circumstances, may be such as to repel any idea or presumption of a promise to pay for such extra services.

Where a party owning a banking ground on which his own logs can be banked and managed without difficulty, if not mixed with others, allows another, as a favor, to bank logs thereon, the labor necessary to get out the logs of the latter, even although in order to get his logs afloat he had to put afloat the logs of the former, should not, nor any part thereof, necessarily be charged to the owner of the banking ground, in the absence of an express agreement to that effect. The agreement or circumstances under which the owner of the banking ground permits another to bank logs on his grounds, the quantity put in by each, the extra labor, cost and expense occasioned by such additional quantity

37 MICH.—52.

of logs, these and such other facts and circumstances as would fairly tend to aid a jury in arriving at a just and proper understanding of the entire case, should be admitted and considered, and the jury should, in the light of all the facts and circumstances, fix the relative rights and obligations of the parties.

Where parties mutually agree to, and do bank their logs at the same place, mixing them indiscriminately as they are hauled upon the same banking ground or rollway, in the absence of any special agreement between them, or of any custom, or other special considerations or circumstance tending to regulate and fix their relative rights and duties, we think it would be the duty of each, at the proper time, to put on a sufficient force of men and means, proportioned to the number of logs he had put in, and in view of the size and condition of the rollway as it then exists, to break the same and put his logs afloat. And this should be done within a reasonable time, taking into consideration the stage of the water in the river, the probable or usual length of time for running logs upon such stream, and indeed all such surrounding facts and circumstances as careful, prudent men, engaged in such business and wishing to get their logs to a place of manufacture or market, would be likely to observe. A failure by either party in this respect would render him liable to the other party, upon an implied assumpsit, for any extra labor by him performed, in consequence of such failure. The language of the court in *Mitchell v. Hosmer*, 30 Mich., 232–3, as to the mutual rights, duties and obligations of parties under certain circumstances, is equally applicable here, but need not be repeated.

If under the facts and circumstances in this case it was the duty of each, in proportion to the logs by him put in, to assist in breaking this rollway, and the defendants failed in this respect, thus compelling the plaintiff to do more than his share of the work in order to get his own logs afloat, in an action brought to recover the value of such services the defendants would have a right to show that from the manner in which the plaintiff performed such work and labor, it was to them of no benefit or value, or that it

was even a positive injury to them. The action being brought to recover the reasonable value of the services performed, the defendants might show that such services were of no value. *Schoenberg v. Voigt,* 36 Mich., 310. If, however, under such circumstances the plaintiff, on account of defendants' neglect of duty, performed the services in getting his own logs afloat, when he had accomplished that fact, he would be under no moral or legal obligation to proceed any further for the purpose of putting defendant's logs afloat. If he did, without the knowledge or authority of defendants, he would not be entitled to recover for such services, nor would he be responsible for any damages which they might sustain in consequence of his not putting all their logs afloat.

The entries made in plaintiff's book by his foreman as to the number of days' work done by him in breaking the rollway, was admissible in connection with the testimony of the plaintiff as to his knowledge of the correctness of the entries.

It appeared on cross-examination of the plaintiff that after the commencement of the suit he had assigned all his interest in this claim to a third party, and defendant's counsel thereupon moved to strike out all the testimony in the case, for the reason that the plaintiff was no longer interested in the subject matter of the suit. This was refused.

We do not now undertake to say what the rights of the assignee would be, should he come into court and ask for protection, or what should be done where it appeared that the assignee had acquired his rights before any litigation had been commenced (of which the debtor had notice), and had no knowledge of any such litigation. *Jeffs v. Day,* 1 Queen's Bench, Law Reports, 372. In a case like the present, so long as the assignee acquiesces in the proceedings, and permits the suit to go on in the name of the assignor, the defendants cannot complain, as they are in no way injuriously affected thereby. Any judgment that may be recovered in such action will protect them and be a bar to any future proceedings which the assignee might undertake to commence for the same cause of action. Had the

assignment been made in this case before suit commenced, the action might still have been brought in the name of the assignor, and need not have stated that it was for the use and benefit of the assignee. *Clay F. & M. Ins. Co. v. Huron Salt and Lumber Mfg Co.*, 31 Mich., 347.

As the rulings below were not in accordance with the views here expressed, the judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.