## LYMAN G. MASON ET AL. V. ISAAC PHELPS.

*Settlement of exceptions—Oral agreement supplementing written contract—Memorandum book to refresh memory of witness—Experts.*

The Legislature has power to authorize the settlement of a bill of exceptions by the successor in office of the judge who tried the cause.

Where a cause was noticed for hearing at a prior term by both parties, and then continued, and afterwards an objection was made, for the first time, that the exceptions had been irregularly settled, *held*, that the objection was waived.

Where logs are sold by written contract, and there is a controversy respecting the quantity delivered, and it appears that the logs were scaled by a certain third person as they were delivered: *Held*, to be competent for the vendor to show that at the time of the sale it was orally agreed between himself and the vendee that such third person should scale the logs.

Such oral agreement was not an amendment or alteration of the written contract; it was merely designating a person, as the mutual agent or servant of the parties, to see to the performance.

The logs were to be delivered afloat, and it was claimed by the vendee that there was a large deficiency in the quantity delivered. A witness for the vendor testified to keeping a memorandum book in which she entered every night the amount delivered as reported to her by the men in charge. *Held*, that she might use the book to refresh her recollection as to entries, and that it was not error to permit her to show the entries to the jury.

When persons offer themselves as experts to testify respecting a business in which their experience has not been very great, it is competent to call persons of greater experience, and inquire of them how much time and experience are necessary to make one an expert in respect to that business.

The vendor having testified that it was agreed upon between the parties that a person named should scale the logs, and the vendee having stated in his evidence that he knew such person was scaling the logs and was satisfied with his doing so, and the trial judge in his charge spoke of the person named as the person "agreed upon" to do the scaling. *Held* no error, notwithstanding the vendees had denied any distinct agreement respecting the scaling.

Motion to strike out exceptions. Submitted January 24. Denied Jan. 25.

*Blair, Kingsley & Kleinhans* and *John Van Arman* for the motion, denied the validity of Act 8 of 1879 allowing exceptions to be settled from the stenographer's minutes, and cited *Campau v. Superior Court* 40 Mich. 630; *Stebbins v. Field* 41 Mich. 373; *Crittenden v. Schermerhorn* 35 Mich. 370.

*Eben Smith* and *J. C. FitzGerald* against.

PER CURIAM. Motion by plaintiffs in error to strike out exceptions as being unlawfully settled, and to remand the case for a new trial because the exceptions cannot now be settled. The facts are that the case was tried by a circuit judge who soon afterwards went out of office, and the bill of exceptions was settled by his successor. The parties agreed entirely on the form of the bill, and there is no complaint of error in it.

The statute (Laws of 1879, p. 5), expressly provides for the settlement of exceptions by the successor of the judge who tried the case, under circumstances like these. If the Legislature has power to make such a provision there is no irregularity in this case. We have no doubt of the power. Hearing of cases in error on exceptions is now and always has been a matter of statutory regulation; the statute gives the right and determines its limits.

In this case it appears that the case has been noticed for hearing by both parties; that it was so noticed for the October term and then continued, and that the present objection is now made for the first time. These facts would be sufficient to constitute a waiver if the exceptions were irregular. But we think they are entirely regular.

Error to Muskegon. Submitted Jan. 25. Decided Apr. 12.

ASSUMPSIT. Plaintiffs bring error. Affirmed.

*Blair, Kingsley & Kleinhans* and *Van Arman & Gordon* for plaintiff in error. A written contract supersedes any previous verbal bargain and the latter cannot be shown to supplement it: *Vanderkarr v. Thompson* 19 Mich. 82;

*Martin v. Hamlin* 18 Mich. 354; *Cline v. Hubbard* 31 Mich. 238; memoranda are not evidence in themselves: 1 Phil. Ev. 484; 2 id. 768 n. 587; *Courtney v. Com.* 5 Rand. 666; *Juniata Bank v. Brown* 5 S. & R. 226; *Smith v. Lane* 12 S. & R. 80; *Farmers' Bank v. Whitehill* 16 S. & R. 90; *Lawrence v. Barker* 5 Wend. 301; *Henry v. Lee* 2 Chit. 124; though a witness may use a memorandum not made by himself to refresh his memory (*Hill v. State* 17 Wis. 675; *Green v. Caulk* 16 Md. 556; *Harrison v. Middleton* 11 Grat. 546); if he knows that it correctly states facts: *Coffin v. Vincent* 12 Cush. 98.

*Eben Smith* and *J. C. FitzGerald* for defendant in error. Evidence of a collateral parol agreement may be given in connection with a written contract which it does not vary: *Davenport v. Mason* 15 Mass. 89; the capacity of an expert witness may be impeached or controverted: *Geary v. People* 22 Mich. 223; *DePhue v. State* 44 Ala. 39; *Ripon v. Bittel* 30 Wis. 614; *Sisson v. Conger* 1 N. Y. 564; *Washington v. Cole* 6 Ala. 212; *Milton v. Roland* 11 Ala. 737; *Miller v. Mut. Benefit Ins. Co.* 31 Ia. 216; *Patchin v. Astor Mut. Ins. Co.* 13 N. Y. 268; *Sanderson v. Nashua* 44 N. H. 492; a witness may refer to memoranda which he knows are correct to refresh his memory: *Downer v. Rowell* 24 Vt. 343; *Seavy v. Dearborn* 19 N. H. 351; *Peters v. Gallagher* 37 Mich. 411; *Burrough v. Martin* 2 Camp. 112; *Burton v. Plummer* 2 Ad. & El. 343; *Jacob v. Lindsay* 1 East 460; *State v. Colwell* 3 R. I. 132; even if the memorandum itself is inadmissible: 1 Greenl. Ev. § 436.

COOLEY, J. On February 7, 1869, the parties to this suit entered into an agreement in writing whereby Phelps was to deliver afloat in the Muskegon river three million feet board measure of logs, which were to be thereby sold to Mason & Co. the plaintiffs, at the price of eight dollars per thousand feet. Payment was to be made for the logs from time to time during the season. The agreement assumed that the amount delivered might be more or less than the exact quantity specified, and provided for proportional pay-

ment in that event. The logs were all to have certain marks upon them, and the parties were to share equally the cost of scaling.

The logs were put into the Muskegon river a little below Big Rapids, having first been scaled by one Thompson. His scale sheet, according to the testimony of Mason, made the quantity 3,191,885 feet. The delivery was completed about November 1, 1869, and payment was made according to Thompson's scale sheet, in drafts maturing in July, August, September and October, 1870. At the close of the sawing season of 1869, which was about the first of January, 1870, Mason claims to have discovered a great shortage in the quantity of the logs, amounting to about 800,000 feet. The drafts were then out, and payment could not be declined, but he endeavored to obtain a settlement by Phelps for the deficiency, but in this he failed. To account for the shortage remaining undiscovered so long, Mr. Mason gives the following explanation of the manner in which logs are brought down the river: "They are floated down, several hundred million feet in all, in one drive, and are followed by men to clear the shores and break jams when they occur, and when the logs reach the mouth of the river at the head of the lake, there they are stopped and the logs of each owner—determined by the marks—are collected by themselves and put into chains, and those chains into rafts, and the rafts are towed to the mill booms of the several owners, where they are delivered and receipted for to the booming company. The process of delivery continues to the close of the season of navigation, or till all are delivered. A scale of the logs was made at the mill as they were received, by persons in the employ of plaintiffs. The logs in question were but a small portion of those received at the mill that season; the total manufacture at the mill for the season having been 21,000,000 feet. There is usually a little loss in running and driving logs, but one per cent. is a sufficient allowance to cover it."

I. Thompson, who scaled the logs when they were put into the river, was dead before the suit was brought. Mason

in his evidence stated that he had no recollection of any conversation with Phelps at the time of making the contract about Thompson doing the scaling, but he expected him to do so, and when he received the scale sheet from him, supposed it to be correct. He also stated that he settled with defendant by Thompson's scale, and paid a portion of his charges. When defendant took the case he was permitted against the objection of the plaintiffs to show by his own testimony that at the time of entering into the written contract it was agreed between himself and Mason that Thompson should scale the logs.

The objection to this testimony was that it varied the written contract, by bringing in as a part of the agreement of the parties an oral contemporaneous understanding. We agree with the circuit judge that it had no such effect. The contract was for the sale of a quantity of logs at a specified price for each thousand feet board measure, but was silent in respect to the mode in which the quantity should be determined. It was not essential that there should be any agreement upon that subject, for the contract was complete without it. Designating a man to determine the quantity was merely sending a common agent or servant for the purpose; and what he had to do was to find out when the contract was performed; and not himself to perform any additional stipulation. *Savercool v. Farwell* 17 Mich. 308; *Blackwood v. Brown* 34 Mich. 4; *Gillett v. Bowman* 43 Mich. 477.

II. To overcome the evidence on the part of the plaintiff that the quantity of logs when received at the mill was far short of the quantity sold, defendant called among others one Mrs. Bentley, who testified that she kept an account for defendant of the number of days men worked with teams in getting the logs into the river. She produced a book in which she made the entries, and testified that she made them every evening after supper. The report was made to her at night by the man at the rollway, or by her husband who was in the woods most of the time. Four loads were reckoned a day's work. She made the entries in her own hand-

writing, and knew them to be correct. The witness was then requested to show the book to the jury, that they might see the manner in which she kept it. This was objected to, but allowed.

It is insisted on the part of the plaintiffs that by this ruling the book was given in evidence to the jury. We do not so understand it. The book was used as a memorandum to refresh the recollection of the witness; and after she had testified that she knew it to be correct, she might have read the entries, or repeated them as her evidence. Showing the book was no more than this. The manner in which the entries were made might have been such as to impress the jury with the truthfulness of the woman's statements; but we find nothing in the record which indicates that the jury were led to suppose that they might receive the entries as evidence of the facts to which the witness testified. The judge expressly said when the objection was made: "The witness can refresh her recollection by reference to this book, but I do not believe the book is admissible for the purpose of proving the number of loads."

III. The evidence of some of the persons who scaled logs for the plaintiffs at the mill showed that their experience as scalers had been very limited. The defendant was afterwards suffered to call scalers of several years' experience and inquire of them how much time and experience was requisite to make one an expert in scaling logs. The objection to this was that the subject was one upon which expert evidence was not admissible. It is said that the question implies that some experience is necessary, and therefore that the business constitutes an art or trade, requiring special experience; a matter which the jury alone had a right to determine. It is also said that if it is competent in this manner to try the qualifications of witnesses, and influence the weight and value of their testimony, the result would be to multiply issues indefinitely and make trials endless.

But in most cases the question whether one is an expert is only to be ascertained by such or similar inquiries. It is not to be supposed that there will be men on every jury

competent to judge for themselves what instruction, training and experience are essential to make one master of any particular profession, trade or employment which is not followed by any of their own number. If one offers himself as an expert, it becomes necessary to test his qualifications. This is usually done by searching questions put to him; and these are not restricted to his own experience, but may call out from him his opinion of the time and practice necessary to make one a master of his calling. But there is no reason which can limit the inquiry to the man himself. Each party may go into the subject, not only on the cross-examination of his adversary's witness, but also on the direct examination of witnesses called by himself. This is not raising a collateral issue; it is placing before the jury the means whereby they may test the value of the evidence.

IV. In his instructions to the jury the circuit judge alluded to Thompson as the scaler agreed upon by the parties, and authorized to ascertain and determine the amount and quality of the logs. This, it is said, was an unauthorized assumption. But we think not. Mason testified, as already stated, that he expected Thompson to scale the logs. He said further that before the contract was made, Thompson "was there scaling the logs, and I knew it and did not question his scale;" that "he was satisfactory to me, and I supposed was with Mr. Phelps." The testimony of Phelps, that Thompson was agreed upon as the scaler, has been given already. These extracts—and others might be given —justify the judge in all he said on that point. It should be stated, however, that the judge did not hold the parties concluded by Thompson's scale, but suffered them to go fully into the question of shortage.

The jury returned a verdict for the defendant; and we find in the record no substantial error.

The judgment must be affirmed with costs.

The other Justices concurred.