HENRY G. BIGELOW v. CHARLES REYNOLDS AND ANDREW J. EMLAW.

*Trespass—Ouster of sublessee—Right of action—Measure of damages —Partnership—Suit by one copartner—Estoppel.*

1. An action of trespass for the ouster of *sublessees* from the possession of a mill standing on leased ground by the owners of the freehold, if sustainable at all, belongs to the sublessees.

2. Under a declaration claiming damages for the interruption of a lumbering business by a wrongful possession of a saw-mill, if anything is recoverable, it is damages for breaking up or interrupting an *active* business, and *rental value*, if allowable at all can only be considered in determining the amount of damages as a *possible* element, but not as *actual* damages.

3. One partner cannot bring a separate action at law for his supposed share of a partnership grievance.

4. While parties may sometimes be bound by what binds their *assignors* in privity, there is no rule which binds any one by *estoppel* by the acts and doings of his subsequent grantees.

Error to Ottawa. (Arnold, J.) Argued January 20, 1888. Decided January 26, 1888.

Case, with allegations of trespass *vi et armis*. Defendants, bring error. Reversed. The facts are stated in the opinion.

*Akeley & McBride*, for appellants.

*Delano & Bunker*, for plaintiff.

CAMPBELL, J. This is an action of trespass on the case, but containing allegations of trespass *vi et armis*, brought by plaintiff against defendants ostensibly for his disturbance in the possession of certain mill property, which is alleged to be personalty. The first count alleges his ownership and management of the property, when disturbed, in entirety, and avers a trespass on April 15, 1879, and divers times since.

The second count, which is the one on which recovery seems to have been had, claims an interest of an undivided one-third, but as a partner with two other persons. The period of disturbance is set between April 15, 1879, and November 25, 1879.

On the trial, plaintiff's case was put upon this general state of facts: That in 1872 a lease was made by defendants and one Carlton L. Storrs, whereby the latter was made lessee for 10 years of the mill premises, and this lease became vested afterwards in plaintiff and two partners, named Enos Stone and Wales Storrs, who did business in the mill till about 1876, when they gave it up, and went into other pursuits, and never resumed it. In 1877 the mill seems to have been leased to a tenant, and in 1878 it was further leased to Glover and McFee. In 1878, defendants, who owned the freehold, purchased of the First National Bank of Grand Haven an execution title to the mill property, which they supposed valid, and which, if valid, made them owners of the whole title, and entitled to possession, subject to no other claim, unless, possibly, one created by a mortgage of plaintiff's interest to Edward Bigelow. Glover and McFee recognized defendants as entitled to possession, and put them in possession; and there was testimony that plaintiff said to · defendants, substantially, that he approved their purchase.

Defendants ran the mill through the season of 1879, with no objection. At the close of the season, plaintiff asked them for an accounting. Subsequent transactions introduced some new elements, and the recovery below was only sought and had for the rental value for that year. The suit was begun in September, 1885, but recovery was had back to April, 1879,—more than six years before suit brought, —upon the apparent notion that nothing became due till the close of the season. If the possession was wrongful, an action would lie at once, and need not be postponed till that time.

There were several questions raised by the assignments of error which we do not think it necessary to consider separately, as enough can be grouped to dispose of the case.

The only trespass committed, if any, was committed when McFee and Glover were tenants, and during their term. The action of trespass for that entry would have been theirs, if it lay at all. But they admitted defendants peaceably and voluntarily, and no actual trespass was committed. In April, 1879, defendants were in peaceable occupancy, claiming title to the land and mill property, and, whatever else they may have done, they committed no trespass. There was no proof that plaintiff or any one else objected to their continuance in possession during the time covered by the declaration.

But, beyond all this, the only count which is relied upon, and the one on which the case was tried, which in this respect resembles the first count, is one for the damage done to plaintiff by the interruption of an existing lumbering business which was meant to be carried on. But on the trial the recovery was had on the basis of a mere occupancy of premises, for which defendants were adjudged to pay a rental value. This was objected to as not admissible, and rightly so.

Under the declaration, if anything was recoverable, it was damages for breaking up or interrupting an active business; and rental value, if allowable at all, could only be considered in determining the amount of damages as a possible element, but not as the actual measure. There were two objections to this. One was that they were let in by actual tenants, the terms of whose lease do not appear, but which might, under some circumstances, and by acquiescence of the owners of the leasehold, have furnished the rental measure for another year, unless changed. Another is that plaintiff showed distinctly that neither he nor his partners had any business to break up, and could not have lost any sum on that score, as rent or otherwise; so that the cause of action, if any existed, was completely variant from the one declared on.

But, furthermore, there is a fatal objection to the cause of action as declared on in the second count. Plaintiff declared as a member of a partnership whose business was interfered with, and claimed an undivided third of the damages for that injury. There is no rule of law which will allow a partner to bring a separate action at law for his supposed share of a partnership grievance. Partners do not own undivided shares in such a sense that each can sue separately for his part in a common wrong. Such actions are not severable, and all must join in bringing them.

The peculiar character of the record renders it a little difficult to understand what was proved and what was not proved. The property is charged in the declaration as pure personalty, but the only evidence of title by lease describes the mill-lot, and says nothing of mill or fixtures, and we find no distinct proof on the subject that is conclusive. This is especially important, because defendants are landlords. So it is assumed by the court that the assignment from the bank to defendants was of a void execution title, but the record does not show how it was void, if at all, and exception is taken to the statement in the charge concerning the concession. One of the means proposed by plaintiff to show the character of the property as personalty was subsequent litigation in a federal court with the assignees of these parties. But, while parties may sometimes be bound by what binds their assignors in privity, there is no rule which binds any one by estoppel by the acts or doings of his subsequent grantees. While the court below seems to have had the proper view of this question, it was, nevertheless, error to admit the testimony concerning these legal proceedings, and we think it quite likely that this led to mistakes in the judgment. There are a good many things in the bill of exceptions indicating that the trial became confused. But, however this may be, it is quite clear that the plaintiff did not make any proof of the case made in his declaration, and that

the second count made out no cause of action at all, and that a majority of the claim of damages arose more than six years before suit. We cannot tell, in this confusion, just how far there is anything recoverable on any basis, and in reversing the judgment we shall remand the case for a new trial, and leave the parties to determine for themselves their future course.

The judgment must be reversed, and a new trial granted.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CHAMPLIN, J., did not sit.