NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0349n.06

Case Nos. 21-1430/1432

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

<table>
<tr><td>
JENNESE MASSENGALE (21-1430);<br>
EXECUTIVE AMBULATORY SURGICAL<br>
CENTER, LLC (21-1432),<br><br>
    Plaintiffs-Appellees,<br><br>
v.<br><br>
STATE FARM MUTUAL AUTOMOBILE<br>
INSURANCE COMPANY,<br><br>
    Defendant-Appellant.
</td>
<td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td>
<td>
<strong>FILED</strong><br>
Aug 22, 2022<br>
DEBORAH S. HUNT, Clerk<br><br>
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br>
OPINION
</td></tr>
</table>

Before: SILER, KETHLEDGE, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** We took these interlocutory appeals to decide when, under Michigan law, partial assignments of no-fault car insurance benefits create privity between the assignor and assignee for purposes of res judicata and collateral estoppel. An intervening state court decision sheds lights on that determination. The Michigan Supreme Court recently held that "a judgment entered [against the assignor] after the assignment does not bind the assignee because the assignee is not in privity with the assignor with respect to that judgment." *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, --- N.W.2d ---, 2022 WL 2104120, at *5 (Mich. 2022). We also understand *Mecosta* to indicate that an assignor and assignee of no-fault benefits are not privies with respect to a judgment against the assignee. Reading Michigan

law in these ways leads us to conclude that the assignors and assignees in today's cases are not in privity. We therefore affirm.

## BACKGROUND

This appeal is comprised of two separate disputes. In both cases, State Farm Mutual Automobile Insurance Company asserts that it does not owe the respective plaintiff benefits under an insurance policy issued by State Farm.

1. The first case involves a claim for insurance benefits asserted by Jennese Massengale. The dispute ties back to injuries Massengale allegedly sustained in a car collision. Following the incident, Massengale obtained treatment from several medical providers, including Spine Rehab, PLLC. In exchange for some of the care she received from Spine Rehab, Massengale assigned the company her "claim/right to pursue payment from any insurance entity." *See Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 895 N.W.2d 490, 505 n.40 (Mich. 2017) (noting "an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider").

Invoking the assignment, Spine Rehab sued Massengale's insurer, State Farm, in Michigan state court. Spine Rehab claimed that State Farm owed it no-fault insurance benefits for post-collision care it provided to Massengale. The jury, however, found that Massengale sustained no "accidental bodily injury" in the collision. Because accidental bodily injury is a prerequisite to any award of no-fault benefits, *see* Mich. Comp. Laws § 500.3105(1); *In re Carroll*, 832 N.W.2d 276, 284 (Mich. Ct. App. 2013), the court entered judgment for State Farm.

Around the time that Spine Rehab's suit commenced, Massengale filed this lawsuit against State Farm. Through this action, Massengale seeks to recover no-fault benefits for other collision-related medical care. After the state court entered judgment for State Farm in Spine Rehab's suit,

State Farm moved for summary judgment in the district court against Massengale on res judicata and collateral estoppel grounds. The district court, however, denied the motion. At State Farm's request, the district court certified for interlocutory appeal the summary judgment order as well as a subsequent order denying reconsideration. *See* 28 U.S.C. § 1292(b).

2. The second case, one pursued by Executive Ambulatory Surgical Center, LLC, presents a similar story. Tamika Burrell purportedly suffered injuries in a car collision. She in turn sued State Farm, her insurer, for no-fault coverage tied to the collision.

Burrell also obtained treatment from numerous medical providers. One was Executive Ambulatory. Another was Michigan Rehabilitation Specialists of Fowlerville, L.L.C. few months after she filed the lawsuit against State Farm, Burrell assigned Executive Ambulatory her "right to enforce payment of charges incurred for Services, for which charges are payable under any policy of insurance, contract, legal claim and/or statute"; she made a similar assignment to Rehabilitation Specialists. Based on Burrell's respective assignments, both Rehabilitation Specialists and Executive Ambulatory filed actions seeking to recover no-fault benefits from State Farm for Burrell's post-accident care. Rehabilitation Specialists' suit reached judgment first, but in an unsatisfactory manner for that company: the jury found that Burrell suffered no accidental bodily injury in the collision. With that judgment in hand, State Farm moved for summary disposition in Burrell's suit, arguing that the judgment against Rehabilitation Specialists precluded Burrell from relitigating whether she had been injured. The Wayne County Circuit Court agreed and entered judgment for State Farm.

State Farm then moved for summary judgment in this suit, asserting that the judgments against Rehabilitation Specialists and Burrell barred Executive Ambulatory's claim. The district court, however, declined to apply res judicata or collateral estoppel and denied summary judgment.

As in the Massengale litigation, the district court certified the summary judgment order and a subsequent reconsideration order for interlocutory appeal under § 1292(b).

We granted State Farm leave to appeal whether "the partial assignment of no-fault personal protection insurance benefits under Michigan law from an insured to a healthcare provider creates privity for purposes of res judicata and collateral estoppel." *In re State Farm Mut. Auto. Ins. Co.*, Nos. 20-0112/21-0101, 2021 U.S. App. LEXIS 13336, at *2 (6th Cir. May 4, 2021) (order).

## ANALYSIS

A. By and large, we can resolve the respective cases on the same grounds. State Farm contends that the state court judgments against Spine Rehab and Burrell bar Massengale's and Executive Ambulatory's respective claims under the doctrines of res judicata and collateral estoppel. We review the district courts' summary judgment rulings de novo, viewing the evidence in the light most favorable to plaintiffs (the nonmoving parties). *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 481 (6th Cir. 2022). And because state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State," 28 U.S.C. § 1738, Michigan law determines the preclusive effect of a Michigan state court's judgment, *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1129 (6th Cir. 2022).

Under Michigan law, "res judicata is employed to prevent multiple suits litigating the same cause of action." *Foster v. Foster*, --- N.W.2d ---, 2022 WL 1020390, at *6 (Mich. 2022) (citation omitted). Res judicata (or claim preclusion) bars a subsequent action where "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Mecosta*, 2022 WL 2104120, at *4 (citation omitted). Collateral estoppel (or issue preclusion), by contrast, prevents

4

relitigating issues raised and decided in a prior suit. *See Hunter v. Hunter*, 771 N.W.2d 694, 712 (Mich. 2009). The doctrine applies where (1) "a question of fact essential to the judgment [was] actually litigated and determined by a valid and final judgment," (2) "the parties or privies '[had] a full [and fair] opportunity to litigate the issue'" in the original suit, and (3) "there [is] mutuality of estoppel." *Mecosta*, 2022 WL 2104120, at *4 (citation omitted).

Today's cases turn on the second element of each preclusion doctrine: privity. For direction on how Michigan state courts would analyze that critical element, we turn to *Mecosta*, a case that also involved assignments of no-fault benefits. There, the Michigan Supreme Court defined privity "as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" *Id.* at *5 (citation omitted). But, the court clarified, "the mere succession of rights to the same property or interest does not, by itself, give rise to privity with regard to subsequent actions by and against the assignor." *Id.* In this setting, the court emphasized, the timing of the assignment is paramount, as the assignee acquires the assignor's rights as they existed when the assignment occurred. *Id.* So "[w]hen the litigation involving the assignor occurs after the assignment, the rights could not yet have been affected by the litigation at the time they were transferred." *Id.*; *see also Saginaw Fin. Corp. v. Detroit Lubricator Co.*, 240 N.W. 44, 45 (Mich. 1932) ("After assignment, the assignor loses all control over the chose, and cannot bind the assignee, by estoppel or otherwise."). As a result, "a judgment entered after the assignment does not bind the assignee because the assignee is not in privity with the assignor with respect to that judgment." *Mecosta*, 2022 WL 2104120, at *5; *see also Howell v. Vito's Trucking & Excavating Co.*, 191 N.W.2d 313, 316 (Mich. 1971) (defining a privy as "one who, *after rendition of the judgment*, has acquired an interest in the subject matter" (emphasis added)).

Much the same is true for a judgment entered against the assignee. Recall that the Michigan Supreme Court defines a privy as one who "has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Howell*, 191 N.W.2d at 316. That does not describe an assignor, who acquires no rights from the assignee. *See Mecosta*, 2022 WL 2104120, at *5. Basic tenets of preclusion law confirm the absence of privity in this setting. A pre-assignment judgment against the assignor binds the assignee because the assignee "takes subject to all defenses against the assignor . . . existing at the time of the assignment." *Saginaw Financing*, 240 N.W. at 45; *see also* Restatement (Second) of Judgments § 43 cmt. a (Am. Law Inst. 1982) (characterizing an adjudication of property rights as "in effect a conveyance from the losing party to the winning party"). Yet the assignor takes no rights from the assignee, meaning he is not subject to defenses available against the assignee. Accordingly, "while parties may sometimes be bound by what binds their assignors in privity, there is no rule which binds any one by estoppel by the acts or doings of his subsequent grantees." *Bigelow v. Reynolds*, 36 N.W. 95, 96 (Mich. 1888); *see also* Restatement (Second) of Judgments § 55 cmt. c ("A judgment for or against the partial assignee does not preclude the assignor from bringing an action on the unassigned portion of the obligation.").

By this reading of Michigan law, privity is absent here, meaning that neither res judicata nor collateral estoppel bars plaintiffs' claims. *Mecosta*, 2022 WL 2104120, at *8. Executive Ambulatory and Burrell are not privies with respect to the judgment against Burrell because that judgment postdated Burrell's assignment of no-fault benefits to Executive Ambulatory. *See id.* at *5; *Howell*, 191 N.W.2d at 316. The same is true for Massengale and Spine Rehab. The two are not in privity with respect to the judgment against Spine Rehab because Massengale did not acquire

her right to no-fault benefits "through or under" Spine Rehab. *Howell*, 191 N.W.2d at 316; *see also Bigelow*, 36 N.W. at 96.

B. State Farm, understandably, has a different outcome in mind.

1. Start with its challenge to Executive Ambulatory's claim. State Farm believes *Mecosta*'s preclusion principles come into play much earlier—when the assignor files an action. After that, says State Farm, any subsequent assignee is bound by any subsequent judgment entered against the assignor in the same action. That matters here, the argument goes, because Burrell's assignment to Executive Ambulatory occurred while Burrell's own suit for no-fault benefits was pending.

While State Farm's argument is plausible, we do not read *Mecosta* to endorse a bright-line rule that post-assignment judgments rendered against an assignor bind the assignee where the assignment occurred during the assignor's suit. Time and again, *Mecosta* emphasized that the seminal event in this circumstance is whether the judgment against the assignor predated the assignment. *E.g.*, 2022 WL 2104120, at *3 (Plaintiffs "were not bound by the earlier judgment because it was entered *after* they were assigned the claim."); *id.* at *5 ("It is therefore well established that a judgment entered after the assignment does not bind the assignee . . . ."); *id.* at *7 (stating "the rule that judgments rendered after an assignment do not bind the assignee"). So did *Howell*, an earlier Michigan Supreme Court decision relied on by *Mecosta*. *See id.* ("[A] privy is one who, *after rendition of the judgment*, has acquired an interest in the subject matter affected by the judgment . . . ." (quoting *Howell*, 191 N.W.2d at 316)). And in holding that privity was lacking because "the judgment [in the first suit] was rendered against [the assignor] after he had assigned the present [no-fault] claim to plaintiffs," *Mecosta* made no mention of when the assignor's suit began. *Id.* at *8. So it is difficult to see how *Mecosta* endorses the idea that privity

7

turns on whether the assignment preceded the assignor's suit. Nor has the Michigan Court of Appeals taken this view. Utilizing the analytical framework that *Mecosta* later adopted, the state appeals court held that an assignor and assignee of no-fault benefits were not privies with respect to a post-assignment judgment in a suit brought by the assignor before the assignment. *See Mich. Spine & Brain Surgeons, PLLC v. Esurance Prop. & Cas. Ins. Co.*, No. 355581, 2021 WL 5027968, at *1, 7 (Mich. Ct. App. Oct. 28, 2021) (per curiam); *see also Enhance Ctr. for Interventional Spine & Sports v. Auto-Owners Ins. Co.*, No. 354517, 2021 WL 5232284, at *2 (Mich. Ct. App. Nov. 9, 2021) (per curiam) (finding privity lacking without considering whether the assignor's no-fault suit began before the assignment).

We note that *Mecosta* had no occasion to consider issues unique to assignments made during the assignor's suit, as the assignment there occurred before the assignor's suit began. Indeed, *Mecosta* cited several authorities that focus on whether the assignment occurred before "the institution of" the assignor's suit. 2022 WL 2104120, at *6 (quoting *Dull v. Blackman*, 169 U.S. 243, 248 (1898)); *see also, e.g., id.* ("The assignee of a note is not affected by any litigation in reference to it, beginning after the assignment." (quoting A. C. Freeman, *A Treatise on the Law of Judgments* § 162 (1st ed. 1873))); *id.* at *6 n.5 (noting the Restatement rule that a judgment against the assignor does not bind the assignee unless "the action was 'brought by the assignor before the assignment'" (quoting Restatement (Second) of Judgments § 55)). Yet the court did not distinguish these authorities from others that look to when judgment issued in the assignor's action. *See id.* at *6–7. So, although we do not read *Mecosta* to endorse State Farm's approach, neither do we understand the case to displace longstanding principles of Michigan law under which assignments made during litigation may, in certain circumstances, give rise to privity.

In particular, where an assignee "acquiesces in" the assignor's ongoing litigation over the assigned rights "and permits the suit to go on" after the assignment, the judgment is "a bar to any future proceedings which the assignee might undertake to commence, for the same cause of action." *Sayre v. Detroit, G. H. & M. Ry. Co.*, 171 N.W. 502, 509 (Mich. 1919) (citing *Peters v. Gallagher*, 37 Mich. 407, 411 (1877)). And for good reason: by choosing not to intervene or otherwise protect himself, the assignee treats the assignor as his representative, come what may. Restatement (Second) of Judgments § 44 cmt. a; 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4462 (3d ed. 2022). *See generally State Mut. Life Assurance Co. of Am. v. Deer Creek Park*, 612 F.2d 259, 268 n.7 (6th Cir. 1979) (observing that judgment "in an action brought by the assignor with the knowledge and consent of the assignee, is binding upon the assignee" (citing *Lamson v. City of Marshall*, 95 N.W. 78 (Mich. 1903))).

But today's record does not establish that Executive Ambulatory acquiesced in Burrell's handling of litigation over the assigned claim. Burrell received treatment from Executive Ambulatory after she filed suit against State Farm. On the day of her treatment, she assigned Executive Ambulatory her right to payment of no-fault benefits. At the time she filed suit, in other words, Burrell's suit could not have encompassed any rights related to Executive Ambulatory's care. *Cf.* Mich. Comp. Laws § 500.3143 ("An agreement for assignment of a right to benefits payable in the future is void."). Nor, so far as the record reveals, did these rights ever play a part in Burrell's suit. To see why, recall that Burrell sought "proper payments to the Plaintiff" along with a declaration as to "[t]he applicability of the No-Fault Act to Plaintiff's claims" and the benefits "owed to Plaintiff." Yet after the assignment, Burrell was not entitled to payment for the cost of Executive Ambulatory's services. Nor does State Farm identify any other evidence that Burrell sought to recover no-fault benefits related to Executive Ambulatory's care. Simply put,

State Farm fails to prove that Executive Ambulatory's rights fell within the scope of Burrell's suit. As a result, Executive Ambulatory never "acquiesce[d] in" Burrell's handling of litigation involving the rights she assigned. *Sayre*, 171 N.W. at 509; *cf. Physiatry & Rehab Assocs. v. State Farm Mut. Auto. Ins. Co.*, No. 350826, 2021 WL 1236126, at *1, 3 (Mich. Ct. App. Apr. 1, 2021) (per curiam) (holding that the assignor's settlement of "all claims for [no-fault] benefits by or for [the assignor]" barred the assignee's suit because the assignee knew the assignor "intended to adjudicate all no-fault claims arising out of the . . . accident" yet failed to intervene).

2. State Farm raises a separate challenge as to Massengale. According to State Farm, Massengale and Spine Rehab were privies because the two shared a "substantial identity of interests" and a "working functional relationship" in which Spine Rehab protected Massengale's interests. *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citation omitted). True, as State Farm observes, Massengale and Spine Rehab each must prove that Massengale suffered an "accidental bodily injury" as a prerequisite to any award of no-fault benefits. Mich. Comp. Laws § 500.3105(1). But, as *Mecosta* makes clear, "[p]rivity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts." *Mecosta*, 2022 WL 2104120, at *5 (citation omitted). So without more, Massengale's and Spine Rehab's common interest in showing that Massengale was injured cannot establish a substantial identity of interests for purposes of privity. *See Gumienny v. Hess*, 280 N.W. 809, 809–10 (Mich. 1938). Nor, in any event, does the record establish a working functional relationship between the two. That State Farm subpoenaed Massengale to testify in Spine Rehab's suit (an invitation she declined), for instance, falls well short of demonstrating cooperation between the two. *Cf. Jones v. Craig*, 212 F.2d 187, 187 (6th Cir. 1954) (per curiam) (finding privity where the

appellee "assisted in the preparation of the defense [in the prior suit] and testified as a witness for the defendant, and also paid one-fourth of the expense of said litigation").

3. Finally, State Farm advances additional counterarguments that bear on both suits. To start, the company invokes the general principle that privity exists where "the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 680 N.W.2d at 396. That rule governs here, the company says, because the assignors and assignees seek no-fault benefits arising from the same accidents under the same insurance policies. We cannot accept State Farm's position, however, in view of *Mecosta*'s holding that "plaintiff assignees were not in privity with [the assignor] . . . after he had assigned the present [no-fault] claim to plaintiffs." 2022 WL 2104120, at *8. That language prevents us from concluding that assignors and assignees of no-fault benefits always stand in privity.

Shifting gears, State Farm notes that *Mecosta* said nothing about when a party has a "full [and fair] opportunity to litigate" for purposes of collateral estoppel. Fair enough. Yet that observation has no bearing on today's outcome. Collateral estoppel applies only if "the parties or privies" previously litigated a question of fact essential to a prior judgment. *Mecosta*, 2022 WL 2104120, at *4. And because the prior suits here did not involve the same parties or their privies, whether a full and fair opportunity to litigate existed then makes no difference.

State Farm also attempts to distinguish *Mecosta* on its facts. There, the previous suit ran aground because the assignor "did not maintain insurance coverage on the vehicle," rendering him ineligible for no-fault benefits under Mich. Comp. Laws § 500.3113(b). *Id.* at *3. Here, by contrast, the prior suits yielded findings that the assignors were not injured. So, State Farm maintains, plaintiffs cannot recover no-fault benefits because the insureds suffered no "accidental bodily injury." § 500.3105(1). The company's theory, however, rests on a flawed understanding

of the prior judgments' preclusive effects. Given our holding that today's assignors and assignees lack privity, plaintiffs are entitled to their opportunity to prove that the collisions caused accidental bodily injuries. *See Mecosta*, 2022 WL 2104120, at \*8.

*   *   *

We affirm.