[Cite as *Smith v. Hess*, 2018-Ohio-3602.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| MICHAEL SMITH, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 2018-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-0096 |
| | : | |
| HEATHER HESS | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of September, 2018.

. . . . . . . . . . .

DARREN McNAIR, Atty. Reg. No. 0075073 and CHAD M. STONEBROOK, Atty. Reg. No. 0089282, 3956 Brown Park Drive, Suite B, Hilliard, Ohio 43240
        Attorneys for Plaintiffs-Appellants

WILBUR H. HANE, Atty. Reg. No. 0073529, 1900 Polaris Parkway, Suite 200B, Columbus, Ohio 43240
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Michael and Victoria Smith appeal from the Greene County Common Pleas Court's entry of partial summary judgment in favor of Heather Hess, the driver of a vehicle that rear-ended a vehicle that then struck the stopped vehicle occupied by the Smiths. Because there is no genuine issue of fact and, as a matter of law, the automobile accident was not a proximate cause of Michael Smith's shoulder injury, the judgment of the trial court will be affirmed.

### *Factual Background and Procedural History*

{¶ 2} On the evening of February 13, 2016, Michael Smith ("Smith") had stopped the sedan he was driving at a traffic light in Beavercreek, Ohio. Smith's wife, Victoria, was seated in the front passenger seat. Without warning, their vehicle was struck from behind by a "hard impact." After confirming that his wife was not injured, Smith called 911. He then exited his vehicle and checked on the woman driving the car behind his, confirming that she, too, was "okay." He noticed damage to the rear bumper of his car and to the front of the second car. He did not check on a third vehicle that had struck the car behind his. The driver of the third vehicle was Heather Hess.

{¶ 3} A Beavercreek police cruiser arrived approximately 15 to 20 minutes later. Smith immediately advised the responding officer that he had an enlarged prostate and needed to urinate. The police officer told Smith to wait briefly. After a few minutes, Smith again approached the officer, repeating that he needed to urinate. Again, the officer told Smith to wait, as the officer planned to have the three drivers involved in the accident move their vehicles to a nearby gas station where he would complete the police report.

{¶ 4} Upon learning that the driver of the second vehicle did not have a valid

driver's license, however, the police officer informed Smith that he could not allow the drivers to move their vehicles until a licensed driver arrived to move the second vehicle or the officer arranged to have that vehicle towed. At that point, Smith advised the police officer that he could not wait any longer to empty his bladder. According to Smith, the officer instructed him to "step over the guardrail and go down the hill to that bush and pee."

{¶ 5} During his deposition, Smith testified that the hill was "very, very steep" and covered with "ice[,] with snow over the ice." The bush was "[m]aybe a third of the way down" the hillside. Because no restrooms were available in the immediate vicinity, Smith

stepped over the guardrail and tried to get my footing because, like I said, it was snow-covered ice. Started down the hill and I started slipping, and kind of had no control. It was like I basically started running down the hill. I was trying to get my footing. I just, you know, was just trying to grasp the ground, you know, to hang on. And I even grabbed some small trees that were growing up on the side of the hill, trying to grab them to stop, and I pulled them out of the ground. And I just kept going. And I tripped and went flying through the air more or less down the hill and landed in the ravine, the upward slope of the ravine down at the bottom.

{¶ 6} Smith testified that he landed 200-250 feet from the guardrail, with his right shoulder "[k]ind of jammed * * * into the embankment," where he lost consciousness. When he regained consciousness, the police officer was calling down to him; Smith urinated and made his way back up the hillside, cradling his arm in the front of his coat. The police officer assisted Smith with the last 15-20 feet and called an ambulance that

transported Smith to a medical center, where he was diagnosed with a fractured right humerus. After keeping his right arm in a sling for nearly a month, Smith underwent surgery on March 8, 2016, to have a plate and 12 screws inserted in his right arm to affix the humerus bone near his shoulder.

{¶ 7} The Smiths filed a complaint against Hess, seeking damages for Michael Smith's personal injuries and related losses and Victoria Smith's loss of consortium. Hess moved for summary judgment, arguing that the automobile accident she allegedly caused was not the proximate cause of Smith's injuries, which instead resulted from Smith's own negligence in falling down the hillside after the accident. In support of her motion, she attached a copy of the transcript of Smith's deposition testimony. The Smiths opposed Hess's motion, urging that Hess's negligence *was* a proximate cause of Smith's injuries because the automobile accident set in motion "a natural and continuous sequence [that] produce[d] an injury without which the result would not have occurred."

{¶ 8} The trial court granted Hess's motion in part, entering summary judgment "in favor of [Hess] as to all claims arising from Plaintiff Michael Smith's slip and fall on a hillside adjacent to the scene of the subject car accident," but denying summary judgment as to any other claims arising from that accident. Pursuant to Civ.R. 54(B), the trial court expressly determined that there was "no just cause for delay," making the summary judgment decision immediately appealable.

{¶ 9} The Smiths appeal from that judgment, setting forth five assignments of error:

1) The trial court erred in ruling that walking down the hill was an intervening superseding cause of the shoulder injury.

2) The trial court erred by concluding walking down a hill broke the ca[us]al

chain between the car accident and the shoulder injury.

3) The trial court erred by concluding that the injury, in light of all the circumstances, was reasonably foreseeable [sic] by the tortfeasor.[1]

4) The trial court erred by granting partial summary judgment because reasonable minds could differ on the issue of proximate cause.

5) The trial court erred by stating that Plaintiffs have not submitted any evidence in opposition to the Motion for Summary Judgment, and rests [sic] merely on legal arguments.

### *Standard Applicable to Motions for Summary Judgment*

{¶ 10} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988); *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher* at 292-293.

{¶ 11} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Id.;* Civ.R. 56(E). Rather, the

---

[1] Presumably the Appellants intended to assert that the trial court erred by finding that the injury was *not* reasonably foreseeable.

burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*; Civ.R. 56(C).

{¶ 12} Appellate review of the trial court's ruling on a summary judgment motion is de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 38-42, citing *Helton v. Scioto Cty. Bd. of Commrs.,* 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997).

### *Law regarding Proximate Cause*

{¶ 13} A claim for personal injuries requires the existence of a duty, the defendant's breach of that duty, and injury or damages that are proximately caused by that breach. *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22. The "proximate cause" element ordinarily is established " 'where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act.' " *Heard v. Dayton View Commons Homes*, 2d Dist. Montgomery No. 27706, 2018-Ohio-606, ¶ 12; *see also Clinger v. Duncan,* 166 Ohio St. 216, 222, 141 N.E.2d 156 (1957).

{¶ 14} "It is a well-established principle of tort law that an injury may have more than one proximate cause." *Leasure v. UVMC*, 2d Dist. Miami No. 2016-CA-21, 2017-Ohio-7196, ¶ 21, quoting *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 587, 575 N.E.2d 828 (1991). "[W]hen two factors combine to produce damage * * *, each is a proximate cause." *Id.*, quoting *Murphy* at 588; *see also Garbe v. Halloran*, 150 Ohio St. 476, 83 N.E.2d 217 (1948), paragraph one of the syllabus ("Concurrent negligence

consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury.").

{¶ 15} Generally, where proximate cause has been established, "the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability." *Clinger* at 222. "In order to relieve a party of liability, a break in the chain of causation must take place." *Berdyck v. Shinde*, 66 Ohio St.3d 573, 584, 613 N.E.2d 1014 (1993). Such a break occurs "when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard." *Id.* at 584-85, citing *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 323, 130 N.E.2d 824 (1955), paragraph one of the syllabus; *Thrash v. U-Drive-It Co.*, 158 Ohio St. 465, 110 N.E.2d 419 (1953), paragraph two of the syllabus. "However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." *Berdyck* at 585*.*

{¶ 16} " 'Whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence.' " (Emphasis deleted.) *R.H. Macy & Co., Inc. v. Otis Elevator Co.*, 51 Ohio St.3d 108, 110, 554 N.E.2d 1313 (1990), quoting *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 39, 90 N.E.2d 859 (1950). "[T]he test to be used to determine whether the intervening act was foreseeable and therefore a consequence of the original negligent act or whether the intervening act operates to absolve the original actor * * * 'is whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new

and independent act or cause which intervenes and thereby absolves the original negligent actor.' " *Leibreich v. A.J. Refrigeration,* 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993), quoting *Cascone v. Herb Kay Co.,* 6 Ohio St.3d 155, 160, 451 N.E.2d 815 (1983).

{¶ 17} As elsewhere stated by the Ohio Supreme Court:

A rule of general acceptance is that, where the original negligence of the defendant is followed by the independent act of a third person which directly results in injurious consequences to plaintiff, defendant's earlier negligence may be found to be a proximate cause of those injurious consequences, if, according to human experience and in the natural and ordinary course of events, defendant could reasonably have foreseen that the intervening act was likely to happen.

Or, stating the proposition a little differently, the connection between the defendant's negligence as a proximate cause of an injury is not broken, if an intervening event is one which might in the natural and ordinary course of things be anticipated as reasonably probable, and the defendant's negligence remains an important link in the chain of causation.

(Citations omitted.) *Taylor v. Webster*, 12 Ohio St.2d 53, 56-57, 231 N.E.2d 870 (1967).

### *Alleged Errors regarding Intervening/Superseding Cause,*
### *Break in Chain of Causation, and Foreseeability*

{¶ 18} The Smiths' first, second and third assignments of error argue that the trial court erred by finding that Smith's act of walking down the hill "was an intervening superseding cause" of his shoulder injury that "broke the ca[us]al chain" between the

automobile accident and that injury, and by finding that such injury was not "reasonably foreseeable" by Hess. Given the overlapping concepts presented by these arguments, we will address the Smiths' first three assignments of error collectively.

{¶ 19} The Smiths concede that Smith's shoulder was injured not by the impact from the rear-end collision that Hess allegedly caused, but as a result of Smith's fall down an icy hillside following the accident. They nonetheless maintain that such injury was a "reasonably foreseeable" consequence of the chain of causation put in motion by Hess's alleged negligence, such that any subsequent negligence of Smith or others that may have contributed to the injury did not extinguish Hess's liability. We disagree.

{¶ 20} Although the Smiths assert that "[i]t is certainly foreseeable that an individual with prostate problems would have to urinate" after a traffic accident, the facts do not support a conclusion that Hess could have "anticipated as reasonably probable" that an occupant of one of the vehicles involved in the subject crash would have such problems and thereafter would attempt to traverse a steep, ice-covered slope next to the roadway in order to empty his bladder. *See Taylor*, 12 Ohio St.2d at 57, 231 N.E.2d 870. The situation here is not analogous to those in the cases the Smiths cite as support for their position. For example, *Grange Mut. Cas. Co. v. Fleming*, 8 Ohio App.3d 164, 456 N.E.2d 816 (10th Dist.1982) involved a three-car collision in which the negligence of both the first and third drivers was alleged to have contributed to the crash that injured the driver of the second car. Under those facts, the court found that "reasonable minds could reach different conclusions" as to whether the two defendants' actions had combined to cause the plaintiff's injuries. *Id.* at 166. The injuries in *Fleming* were the direct result of a single impact, not a separate event that occurred after that impact.

{¶ 21} In another automobile accident case on which the Smiths rely, the plaintiff was injured after a non-party driver struck her car and "turned it crosswise on [a] bridge," where it was struck by a second vehicle several seconds later. *Garbe*, 150 Ohio St. at 477, 83 N.E.2d 217. There, the Supreme Court found that the non-party was responsible for placing the plaintiff's car "in a zone of danger" on the bridge "so close in point of time as not to break the chain of causation." *Id.* at 481. Again, the facts regarding Smith's injuries are not comparable.

{¶ 22} Likewise, with respect to a vehicular collision where this Court reversed a grant of summary judgment in favor of the defendant-driver, we based that reversal on our determination that "reasonable minds could conclude that the chain of events set in motion by the acts or omissions of [the defendant] * * * *unfolded in rapid succession in a continuous and unbroken fashion*, with a result that the causal connection between that act or omission and [the plaintiff's] injuries was not broken by" the plaintiff's own negligence. (Emphasis added.) *Crosby v. Radenko*, 2d Dist. Montgomery No. 24343, 2011-Ohio-4662, ¶ 56. The circumstances of the instant matter are readily distinguishable from those in *Crosby*. Here, Smith was not injured in the location where his car came to rest, within seconds after the impact allegedly caused by Hess. Instead, Smith had exited his car, surveyed the accident scene, waited several minutes for the police to arrive, and spoken multiple times with the responding police officer before, at the police officer's urging, stepping over the guardrail and attempting to make his way down what he knew to be a "very steep" and ice-covered hillside.

{¶ 23} Under this factual scenario, we conclude, as a matter of law, that reasonable minds could *not* find that the chain of events Hess set in motion "unfolded

in rapid succession in a continuous and unbroken fashion." *See id.* To the contrary, Smith's own conduct in choosing to brave the icy hillside was a "new and independent act" that took him from any "zone of danger" created by Hess and introduced risk of his own making, thus interrupting any sequence set in motion by Hess's alleged negligence.[2] *See Leibreich,* 67 Ohio St.3d at 269, 617 N.E.2d 1068; *Garbe* at 481. This case bears a closer resemblance to the facts of *Slayton v. Tri-County Mtge. & Invest.*, 7 Ohio Misc. 13, 218 N.E.2d 643 (C.P.1966), where the plaintiff's decedent was struck and killed by a second driver while walking along the roadway an hour after the defendant struck his vehicle. In *Slayton*, the trial court determined that the "hazard" created by the first driver "was static, not active, at the time of the intervening conduct" of the second driver and the decedent himself. *Id.* at 16. "The 'dust' had long since settled" before the other parties' conduct "created an altogether new hazard" which caused the decedent's death. *Id.*

{¶ 24} The same analysis applies in this case. We find that Smith's intervening act superseded Hess's alleged negligence, *see id.*, and also was not "reasonably foreseeable" by Hess. *See R.H. Macy & Co.*, 51 Ohio St.3d at 110, 554 N.E.2d 1313. The trial court did not err in its findings to that effect. The Smiths' first, second and third assignments of error therefore are overruled.

### *Alleged Error regarding Proximate Cause as Jury Question*

{¶ 25} In their fourth assignment of error, the Smiths contend that the trial court erred by not deferring the issue of proximate cause for jury decision. Ordinarily,

---

[2] We need not consider the parties' allusions to possible negligence by the police officer, nor the prospect that the second driver's act of driving without a valid license also may have contributed to the circumstances that led Smith to venture down the icy slope.

proximate cause is a question of fact for the jury. *Westfall v. Lemon*, 4th Dist. Washington No. 14CA12, 2015-Ohio-384, ¶ 23, citing *Strother v. Hutchinson,* 67 Ohio St.2d 282, 288, 423 N.E.2d 467 (1981), citing *Clinger,* 166 Ohio St. 216, 141 N.E.2d 156. Nevertheless,

> where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury [to decide], and, as a matter of law, judgment must be given for the defendant.

*Id.*, quoting *Kemerer v. Antwerp Bd. of Edn.,* 105 Ohio App.3d 792, 796, 664 N.E.2d 1380 (3d Dist.1995) and *Case v. Miami Chevrolet Co.,* 38 Ohio App. 41, 45-46, 175 N.E.2d 224 (1st Dist.1930); *see also Byrd v. Goldsmith*, 1st Dist. Hamilton No. C-74520, 1975 WL 181982, at *1 (Sept. 22, 1975) ("[I]n order for a jury question to be presented on *the issue of proximate cause*, * * * there must be sufficient evidence that the negligence of [the defendant], if indeed there was negligence, probably was the cause of the injury and subsequent damage claimed.") (Emphasis sic.); *Vermett v. Fred Christen & Sons Co.,* 138 Ohio App.3d 586, 612, 741 N.E.2d 954 (6th Dist.2000) ("While proximate cause is often a jury question, summary judgment is proper on this issue when appellant has failed to meet his burden to produce evidence to challenge unfavorable evidence already in the record."). Where "reasonable minds could reach but one conclusion *on that issue* and the issue would be unfavorable to the plaintiff," the trial court is not required to submit the issue of proximate cause to a jury. (Emphasis sic.) *Byrd* at *1.

{¶ 26} In light of our foregoing analysis of the issues of foreseeability, intervening

and superseding cause, and breaking the chain of causation, we conclude that the trial court did not err by granting partial summary judgment rather than reserving the issue of proximate causation for decision by a jury. Having concluded that reasonable minds could not differ regarding the effect of Smith's actions on the chain of events allegedly set in motion by Hess, *see* ¶ 23, above, we likewise overrule the Smiths' fourth assignment of error.

### *Alleged Error regarding Evidence Presented in Opposition*

{¶ 27} The Smiths' final assignment of error asserts that the trial court erred by stating that the Smiths had submitted no evidence in opposition to Hess's motion for summary judgment, but instead relied solely on "legal arguments." The trial court was not mistaken in observing that "the only Rule 56(C) evidence" before it for purposes of Hess's motion was "the transcript of the deposition of Plaintiff Michael Smith," which in fact was "submitted" by *Hess* as an exhibit to her motion, not as an attachment to the Smiths' opposing memorandum. Additionally, while the Smiths' opposing memorandum in the trial court does contain references to Smith's deposition testimony, they cited that evidence not to contest the facts as laid out by Hess, but as support for their arguments regarding the legal significance of the undisputed facts. The record does not support a conclusion that the trial court erred in its characterization of the evidence before it for purposes of the judgment at issue.

{¶ 28} Moreover, our de novo review indicates that the trial court reached its decision by applying the applicable law to the relevant facts of record, regardless of who "submitted" that evidence. Significantly, Appellants have identified no specific mistakes or omissions alleged to afflict the trial court's recitation of the facts of this matter, nor

have we discerned any instances where the trial court inaccurately construed the evidence. Because the Smiths have failed to challenge any of the trial court's specific statements as to the underlying facts, any error by the trial court in describing the evidence before it was harmless. Appellants' fifth assignment of error is overruled.

### *Conclusion*

**{¶ 29}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Darren McNair
Chad M. Stonebrook
Wilbur H. Hane
Hon. Michael A. Buckwalter