RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NOCO COMPANY,

                  *Plaintiff-Appellee*,

v.

OJ COMMERCE, LLC,

                  *Defendant-Appellant*.

> No. 21-3488

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02298—James S. Gwin, District Judge.

Decided and Filed:  May 20, 2022

Before: CLAY, DONALD, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Aaron W. Davis, VALHALLA LEGAL, PLLC, Northfield, Minnesota, for Appellant.  Jon J. Pinney, KOHRMAN JACKSON & KRANTZ, LLP, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge.  NOCO Company manufactures and sells battery chargers and related products.  Although it sells these products itself, NOCO also authorizes resellers if they sign an agreement.  This dispute began when NOCO discovered that OJ Commerce (OJC) was selling NOCO's products on Amazon without authorization.  NOCO complained to Amazon that OJC was selling NOCO's products in violation of Amazon's policy.  And around the same time, another company also complained to Amazon about OJC.  Amazon asked OJC for proof that it

was complying with its policy. But OJC didn't provide adequate documents and Amazon temporarily deactivated OJC's account. Now, OJC blames NOCO. It argues that NOCO submitted false complaints, and it brings three claims against NOCO: defamation, tortious interference with a business relationship, and a violation of the Ohio Deceptive Trade Practices Act.

To succeed on these claims, though, OJC must establish that NOCO was the proximate cause of its injury. But it can't do this because three intervening causes broke the causal chain, relieving NOCO of any liability. Thus, the district court rejected OJC's claims on summary judgment, and we **AFFIRM**.

I.

NOCO produces battery chargers and related products. It sells these products online and to authorized resellers, who must sign an agreement with NOCO. Under the agreement, the resellers can only sell to customers, not to retailers. And the resellers must abide by NOCO's minimum-advertised-price policy.

One reseller, CWR Electronics, broke the agreement and sold NOCO's products to OJC, an online retailer. And, in March 2016, OJC began selling the products on Amazon without a reseller agreement with NOCO. So NOCO complained to Amazon. And Amazon removed the items from its platform.

About two years later, NOCO again found that OJC was selling its products on Amazon. So it sent a letter to OJC demanding that it either sign the reseller agreement or stop selling NOCO's products. But its efforts were futile, so NOCO submitted multiple reports to Amazon.

NOCO submitted these reports under Amazon's anti-counterfeiting policy. That policy prohibits a seller from listing counterfeit products and products that infringe on another's intellectual property. It also permits Amazon to ask for proof of authenticity and authorization to sell. And even though OJC claims that the NOCO products it was selling were genuine, NOCO alleged that the policy covered OJC's listings because OJC sold NOCO's products without authorization.

NOCO was doing what Amazon encourages rights owners to do; namely, to notify it of any violations. But importantly, Amazon investigates and acts based on its own independent review. So any decision that a seller is violating Amazon's policy is based on Amazon's independent investigation.

And here Amazon investigated. From October 2, 2019, to January 6, 2020, NOCO filed six complaints. In response to each, Amazon sent a warning to OJC that it was violating NOCO's intellectual property rights. Amazon removed the products from the website and gave OJC ninety days to provide documents to the contrary.

In response to Amazon's first warning, OJC submitted a letter from CWR stating that OJC was allowed to buy (not sell) NOCO products. But Amazon was not satisfied and did not reinstate the listing. In response to another email, OJC told Amazon that it was an "authorized reseller" of NOCO's products. (R. 37-12, Gardner's Dec. 30, 2019, Email to Amazon, PageID 424.) But again, Amazon rejected this and asked for other documents.

Then on January 14, 2020, another party entered the scene. Emson, a manufacturer, filed a complaint with Amazon stating that OJC violated its patent. About two weeks later, on January 29, Amazon sent OJC a final warning. It gave OJC seventy-two hours to provide documentation or risk having its account deactivated. Three days later, Amazon deactivated the account. The reason? Amazon had "not received a valid plan of action addressing the listings" that OJC was warned about earlier. (R. 36-10, PageID 340-42.) One of the listings was for a NOCO product, the other was for an Emson product. Other than this, OJC has given no evidence for why Amazon deactivated its account.

Two days later, though, Amazon restored OJC's account. Amazon gave no reason why.

This diversity action began while these events were going on. NOCO sued OJC in October 2019 for selling its products without authorization. OJC countersued NOCO for (1) defamation, (2) tortious interference with a business relationship, and (3) a violation of the Ohio Deceptive Trade Practices Act.

After discovery and the filing of amended pleadings, both parties moved for summary judgment. The district court granted both motions. Relevant here, the court held that OJC failed to show that NOCO was the proximate cause of its injury. And because all three of OJC's claims require proximate cause, they all fail. Only OJC appealed.

## II.

Before we get to the merits, we must be satisfied that we have jurisdiction. *JPMorgan Chase Bank v. Winget*, 920 F.3d 1103, 1105 (6th Cir. 2019). Neither party contests, or even addresses, the issue. But we must address it sua sponte if we have doubt. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 392 (6th Cir. 2016). And here, we do.

OJC, the appellant, is the original defendant. Its appeal is from the dismissal of its counterclaims brought in response to NOCO's amended complaint. NOCO brought its original complaint as a federal question case arising under trademark law. *See* 28 U.S.C. § 1338(a). It explicitly brought claims under 15 U.S.C. § 1114 for trademark infringement and 15 U.S.C. § 1125 for trademark dilution. From the face of that initial complaint, there was no reason to question jurisdiction.

But that original complaint is not the operative complaint here. The trial court dismissed much of NOCO's original complaint, including its claim for trademark infringement, under the "first sale exception" doctrine (though not the claim for trademark dilution). Following that dismissal, which is uncontested now, and some discovery, NOCO filed an amended complaint. The amended complaint, of course, supersedes the original complaint. And it must stand on its own jurisdictional basis. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."). There is a question here whether it does. The amended complaint cited no federal statutes, even though NOCO again invoked only federal question jurisdiction. Instead, the amended complaint brought one count for relief under Ohio Revised Code § 2721.03, which is part of Ohio's Declaratory Judgment Act. And although state laws may "arise under" federal trademark law, *see Gunn v. Minton*, 568 U.S.

251, 258-59 (2013), that's typically only where the resolution of the claim calls for interpreting federal law, *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).

But the lack of federal jurisdiction over the initial complaint would not end our inquiry nor would it doom this appeal. NOCO has not appealed the court's rejection of its amended complaint on summary judgment. Instead, this appeal is about the court's rejection of OJC's counterclaims. And even when a court lacks subject matter jurisdiction over an initial complaint, it may resolve counterclaims where it has an independent basis for jurisdiction over those claims. *Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 546 (6th Cir. 1994); *see also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1414 (3d ed. 2021) ("[I]f the court determines that there is no basis for federal jurisdiction over plaintiff's original claim, then it cannot proceed to adjudicate a compulsory counterclaim that does not have an independent jurisdictional basis."). OJC brought its counterclaims asserting diversity jurisdiction under 28 U.S.C. § 1332. And unlike NOCO, it made specific allegations about the diversity of citizenship between the parties and the amount in controversy. NOCO didn't move to dismiss on that jurisdictional ground and we have no reason to doubt it. So we can exercise jurisdiction over OJC's counterclaims here regardless of the status of the amended complaint.

And even if we may, in our discretion, refuse jurisdiction, we see no reason for doing so here. *See, e.g.*, *Columbia Gas Transmission Corp., v. Drain*, 191 F.3d 552, 559 (4th Cir. 1999) (recognizing the "usual rule" that a court "may exercise jurisdiction over a compulsory counterclaim after the original claim has been dismissed" if "the counterclaim has an independent basis for jurisdiction" but refusing to do so); *see also* Wright & Miller, *supra*, § 1414 ("If the counterclaim does present an independent basis of federal jurisdiction, however, the court *may* adjudicate it . . . despite the dismissal of plaintiff's complaint" (emphasis added)).

## III.

We review a grant of summary judgment de novo. *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441 (6th Cir. 2021). Summary judgment is appropriate only if the movant, here NOCO, "shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the nonmoving party, here OJC. *Mays v. LaRose*, 951 F.3d 775, 783 (6th Cir. 2020).

IV.

OJC brings three claims against NOCO: defamation, tortious interference with a business relationship, and a violation of the Ohio Deceptive Trade Practices Act.[1] All three claims require that OJC prove that NOCO was the proximate cause of its injury.[2] But OJC can't. That's because three intervening causes break the causal chain and relieve NOCO of liability. These are: (1) Emson's complaint, (2) Amazon's independent investigation and decision, and (3) OJC's opportunity to prevent the harm to itself. So NOCO is entitled to summary judgment.[3]

---

[1]OJC argues that NOCO's complaints to Amazon were defamation per se, entitling it to a presumption of damages. But OJC has not submitted the contents of NOCO's complaints into the record. And without the statements, OJC cannot argue that they were defamatory per se. This is because "[d]efamation per se occurs when material is defamatory on its face." *Ne. Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 916 N.E.2d 484, 490 (Ohio 9th Dist. 2009) (internal quotation omitted). Without the content of the complaints, it is impossible to determine whether they were defamatory on their face. *Cf. Desai v. Charter Commc'n, LLC*, 835 F. App'x 25, 29 (6th Cir. 2020); *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005) (affirming summary judgment for the defendant when the plaintiff failed to place the allegedly defamatory statements into the record). This is especially true here because the anti-counterfeiting policy includes authorization to sell authentic goods. So there is no evidence that NOCO made any false statements to Amazon, even if it believed that OJC were selling authentic goods.

[2]Defamation requires that the plaintiff show: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault . . . ." *Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015) (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 866 N.E.2d 151 (Ohio 2012)). Tortious interference with a business relationship requires a plaintiff to show: "(1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages . . . ." *Westfall Auto Sales, LLC v. Zurich Am. Ins. Co.*, 2021 WL 5298540, at *4 (6th Cir. Nov. 15, 2021). And finally, under the Ohio Deceptive Trade Practices Act, the plaintiff "need only establish an injury that was proximately caused by a person who commits a deceptive trade practice" listed in the act. *Torrance v. Rom*, 157 N.E.3d 172, 189 (Ohio 8th Dist. 2020).

[3]OJC argues that it is improper to grant summary judgment on the question of proximate cause because it is a question for the jury. (Appellant's Br. at 23.) It's true that proximate cause is generally a question for the jury under Ohio law. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 564 (6th Cir. 2006) (discussing Ohio law). But "if the plaintiff's evidence on the issue of proximate cause requires mere speculation and conjecture to determine the cause of the event . . . , then the defendant is entitled to summary judgment." *Id.* As explained below, OJC has not shown that there is an issue of material fact as to proximate causation. So the question is not for the jury.

A.

We begin with some general principles of proximate cause.  In Ohio, "the proximate cause of an event is that which is a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Aiken v. Indus. Comm'n*, 53 N.E.2d 1018, 1020 (Ohio 1944).

The term "proximate cause" is a bit of a misnomer.  *Johnson v. Univ. Hosps. of Cleveland*, 540 N.E.2d 1370, 1377 (Ohio 1989) ("Proximate cause" is "an unfortunate term" (quoting Prosser & Keeton, *The Law of Torts* § 41, at 264 (5th ed. 1984))); *Hester v. Dwivedi*, 733 N.E.2d 1161, 1165 (Ohio 2000).  Indeed, it's not about causation, but "the limitations . . . upon the actor's responsibility for the consequences of the actor's conduct."  *See id.*; *see also* 1 Dan B. Dobbs, et al., *The Law of Torts* § 198 (2d ed. 2011) (explaining that a better term for proximate cause is "scope of liability").  This means that the plaintiff must show that the defendant should be held liable for causing the injury.  *See Hester*, 733 N.E.2d at 1166.

But it doesn't make sense to hold the defendant liable for every potential cause that stems from his action.  *Id.* at 1165 (calling this limitation the "outer bounds of causation").  For example, suppose a surgeon negligently performs a vasectomy that leads to his patient fathering a child.  Should the surgeon be liable if that child later sets fire to a barn?  The law says no.  *See* Dobbs, *supra*, § 198; *cf. Johnson*, 540 N.E.2d at 1378 (holding that in wrongful pregnancy actions parents can recover for costs of the pregnancy but not for the costs of child-rearing).  So we ask if the defendant's action and the plaintiff's injury are connected to such a "significant degree" as to justify "imposing liability."  *Walls v. Durrani*, No. C-200167, slip op. at 2, 2021 WL 5860869 (Ohio 1st Dist., Dec. 10, 2021).

The thing is, though, there will always be some cause between the initial action and the injury.  *See* Dobbs, *supra*, § 201.  In fact, it's "inevitabl[e]" that "something" even "if only the movement of air" will "intervene between the defendant's act and the plaintiff's injury."  *Id.*; *cf. Johnson*, 540 N.E.2d at 1377 ("In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of time." (quoting Prosser, *supra*, at 264)).

Sometimes these intervening acts "unite[] with the original act to cause injury." *Doyle v. Fairfield Machine Co.*, Inc., 697 N.E.2d 667, 680 (Ohio 11th Dist. 1997). This happens when the original cause "put in motion the sequence of events leading to the injury." *Id.* at 679. In that case, the original wrongdoer is still liable. *Id.* And this is why an event can have more than one proximate cause. *Murphy v. Carrollton Mfg. Co.*, 575 N.E.2d 828, 830 (Ohio 1991).

At other times, however, an intervening cause will break the causal chain. *Czarney v. Porter*, 853 N.E.2d 692, 694 (Ohio 8th Dist. 2006) (citing *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 670 (Ohio 1995)). Courts call this a superseding cause. *See McRoberts v. Dayton Power Light Co.*, 757 N.E.2d 1230, 1236 (Ohio 2d Dist. 2001). And in that case, the original party is no longer liable. *Id.*

What's the difference under Ohio law? Foreseeability. If the intervening cause was "reasonably foreseeable" by the original actor, then the original actor will be liable. *Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 819 (Ohio 1983). In other words, even if there is an intervening event, the defendant will still be liable if he could have reasonably foreseen the intervening event. For example, if the defendant negligently spills gasoline in a place where children usually play, and one of the children sets the gasoline on fire, the defendant could be liable for the injury that results. *See Cascone*, 451 N.E.2d at 820.

B.

With that in mind, we turn to the three intervening causes in this case. Remember these were: (1) Emson's complaint, (2) Amazon's independent investigation, and (3) OJC's own action in failing to prevent the harm. Each of these presents a different scenario but the underlying question is the same: Whether these causes supersede the causal chain and relieve NOCO of liability. We think they do.

*Emson's Complaint*. As noted above, Emson complained to Amazon about OJC's infringement of its patent. This complaint could have, by itself, led to Amazon's investigation. So, in this scenario, the acts of a third party independently could have caused the harm. Is that a superseding cause that relieves NOCO of responsibility? The answer depends on foreseeability.

The acts of a third party that independently cause the plaintiff's harm are a superseding cause only if the defendant couldn't have foreseen it. *See Taylor v. Webster*, 231 N.E.2d 870, 872-73 (Ohio 1967). But that act must be "an efficient, independent, and self-producing cause of the injury" to break the causal chain. *Smith v. Hess*, 108 N.E.3d 1266, 1272 (Ohio 2d Dist. 2018).

Consider two cases from Ohio. Both involved BB guns. In one, a high schooler took a BB gun from his friend's room during a party, shot at the plaintiff, and injured her eye. *Morner v. Giuliano*, 857 N.E.2d 602, 604 (Ohio 12th Dist. 2006). His actions "broke the causal chain" and relieved the defendant of any negligence in storing the gun. *Id.* at 611. That's because not only were these acts "independent" of the defendant, but he "could not have reasonably foreseen" them. *Id.* Yet the Supreme Court of Ohio, faced with a very similar fact pattern, came out the other way. *See Taylor*, 231 N.E.2d at 871. In that case, a mother gave her ten-year-old son a BB gun while his friends were around. *Id.* Unsurprisingly, he fired it and injured the plaintiff's eye. *Id.* Because this was foreseeable, the Ohio Supreme Court held that the mother could be liable for the injury. *Id.* at 873.

Now consider Emson's complaint here. To relieve NOCO of liability, the complaint must (1) have been an "efficient, independent, and self-producing" cause that (2) NOCO couldn't foresee. Emson's complaint checks both boxes.

Emson was a third party who independently complained to Amazon that OJC was violating its patent just two weeks before Amazon deactivated OJC's account. That complaint led Amazon to investigate. And Amazon cited it as a reason for deactivating OJC's account. So, by itself, that complaint could have led to the deactivation of OJC's account. Thus, it was just the kind of "efficient, independent, and self-producing" cause that could break the causal chain.

And NOCO couldn't foresee Emson's complaint. Emson is a different company from NOCO. Nothing in the record suggests that NOCO knew that OJC was violating Emson's patent or that Emson would complain to Amazon. So Emson's complaint was an "efficient, independent, and self-producing" cause of the injury that wasn't foreseeable and relieves NOCO of any responsibility.

OJC attacks both aspects of Emson's complaint that make it a superseding cause.  First, it argues that violating Amazon's IP policy—the policy Emson complained under—doesn't result in deactivation.  This is wrong.  Amazon's IP policy explicitly states that a violation "may result in loss of selling privileges" and provides actions a seller can take if its "account has been suspended because of notices of IP infringement."[4]  Amazon, *Intellectual Property Policy for Sellers*, https://sellercentral.amazon.com/gp/help/external/201361070 (last visited, Feb. 17, 2022).[5]  So violating Amazon's intellectual property policy does result in suspension, which means that Emson's complaint, by itself, could have led to the deactivation of OJC's account.

Second, OJC argues that NOCO could foresee that Amazon would deactivate its account.  But OJC can't have its cake and eat it too.  The only reason that it would be foreseeable to NOCO that Amazon would deactivate its account would be if OJC was actually violating the anti-counterfeiting policy.  But if OJC violated the policy, then NOCO's complaint was not the proximate cause of the deactivation.  Rather, it was its own failure to abide by the policy.  In any event, NOCO submitted complaints to Amazon for three months and Amazon did not deactivate OJC's account.  It was not until Emson also complained that Amazon deactivated the account.  So based on Amazon's previous inaction, it wasn't foreseeable to NOCO that Amazon would deactivate OJC's account.  And again, it wasn't foreseeable to NOCO that Emson would have even complained.

*Amazon's Independent Investigation*.  But even if Emson weren't in the picture, NOCO would still not be liable.  Why?  Because Amazon conducted its own independent investigation.  So here we have another scenario where a third party is intervening.  But, unlike Emson's complaint, Amazon is not independently causing the harm.  Instead, Amazon could have prevented the harm and failed to do so.  Is that a superseding cause?  Yes.

---

[4]OJC relies on Amazon's Intellectual Property for Rights Owners.  But that is not the policy that would be relevant to OJC.  As a seller, OJC is governed by the policy for sellers.

[5]Both parties cite the current Amazon IP policy without suggesting that it differs from the policy in effect at the time of the relevant events here.

When a third party that could have prevented the harm acts to cause the harm instead, then the chain of causation is broken. The Ohio courts explain it this way: A break occurs when "another conscious, responsible agency that could or should have eliminated the hazard intervenes in an agency creating a hazard and an injury result[s] therefrom." *See Czarney*, 853 N.E.2d at 694.

For an illustration, consider *Durrani*. *See Walls v. Durrani*, No. C-200167, slip op., 2021 WL 5860869 (Ohio 1st Dist., Dec. 10, 2021). There, the plaintiff sued a doctor who first advised her to get an intrusive surgery. *Id.* at *1. She didn't. *Id.* Instead, she chose a less intrusive surgery and a different doctor performed it. *Id.* The Ohio Court of Appeals found no proximate cause. *Id.* at *5. The court explained that any "initial negligence" by the defendant "was cut off" by the second doctor's "independent recommendation and performance of" the less-intrusive surgery. *Id.* That's because proximate cause "does not include acts interrupted by another person's tortious conduct." *Id.* And the second doctor "was a conscious and responsible agent" that "could have" and "in fact did, eliminate any hazard" from the first doctor's negligence. *Id.*

And our malicious prosecution cases are also informative. The causation issues presented here are analogous to those we resolve in malicious prosecution cases brought under 42 U.S.C. § 1983. *See, e.g.*, *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). Typically, in those cases, a plaintiff who was wrongfully prosecuted sues the police officer whose actions began the criminal proceedings. The plaintiff generally argues that false information provided by the investigating officer began a chain of events that eventually caused the criminal proceedings. And, like NOCO, the officer responds that the chain of causation was broken because prosecutors and courts independently determine issues like probable cause.

How do we decide those cases? We look at whether the officer's actions influenced the final decision. For example, in *Gregory*, the plaintiff brought malicious prosecution claims against two officers based on some false investigatory notes and false testimony at a hearing. *Gregory v. City of Louisville*, 444 F.3d 725, 757 (6th Cir. 2006). We found that the false investigatory notes were not linked to the court's decision, so the claim based on them couldn't proceed to the jury. *Id.* at 759-60. But the false testimony directly factored into the court's decision, so that claim could. *Id.* at 758-59. And in *Sykes* too, we explained that even though it was the prosecutor who made the decision, there was still "ample evidence" of the officer's "influence[] or participat[ion]"

in the ultimate decision to prosecute. *Sykes*, 625 F.3d at 317. Compare that with *DePiero*, where we rejected a malicious prosecution claim because the officer "had no role" in issuing the warrant. *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999).

Here, Amazon conducted its own independent investigation. And it made the decision to deactivate OJC's account based on that investigation. Amazon's anti-counterfeiting policy tells us just as much. In its policy, Amazon explicitly states that it takes actions based on its own review. And Amazon sent multiple warning emails to OJC before deactivating OJC's account. This shows that Amazon did, in fact, investigate the claims and that NOCO had no role in the investigation or the ultimate decision. OJC provided no evidence to the contrary. Thus, even if NOCO's complaint alone set off Amazon's investigation, Amazon had the chance to "eliminate the hazard" and didn't. So Amazon's independent investigation was an intervening cause that relieves NOCO of any responsibility.

*OJC's Own Conduct.* Finally, consider the third cause in this case: OJC's own conduct. Unlike the previous two causes, this one is based on the party's own action. Can a party's own action be a superseding cause? It can.

When the plaintiff's own conduct could have prevented the harm but didn't, the plaintiff's actions are considered a superseding cause. So, to find proximate cause, the "causal connection" between the defendant's acts and the plaintiff's injury, must not be "broken by the plaintiff's own negligence." *See Smith v. Hess*, 108 N.E.3d 1266, 1273 (Ohio 2d Dist. 2018) (quotation marks and emphasis omitted); *see also Miller v. Nussbaum*, 1999 WL 3568, No. 98COA01253, (Ohio 5th Dist. Dec. 14, 1998).

In *Hess*, the Ohio Court of Appeals found that the plaintiff's own actions were a superseding cause that broke the causal chain. *See* 108 N.E.3d at 1274. After a car crash, the plaintiff exited his car and eventually "stepp[ed] over the guardrail and attempt[ed] to make his way down what he knew to be a 'very steep' and ice-covered hillside." *Id.* at 1273. The court found that the plaintiff's "own conduct," had "interrupt[ed] any sequence set in motion by [Defendant's] alleged negligence." *Id.* at 1274.

In *Nussbaum*, too, the Ohio Court of Appeals found that the plaintiff's arrest and prosecution "were the result of her actions" in fleeing from the police. 1999 WL 3568, at \*4. Even though the police chased the plaintiff because of the defendant's statements to them, the plaintiff's actions were "an intervening and superseding cause." *Id.* So the defendant's statements were not the proximate cause of the plaintiff's injuries. *Id.*

So too here. OJC's account was suspended because of its failure to submit documents that satisfied either of Amazon's policies. After every complaint, Amazon sent OJC an email asking for documentations that prove it was following the policies. At this point, OJC could have stopped the harm. But it didn't. Its documents didn't convince Amazon that it was following the policy. And so Amazon suspended OJC's account. Thus, because OJC could have prevented the harm to itself and failed to do so, its own actions were a superseding cause that relieved NOCO of liability.

In sum, three causes here relieved NOCO of liability: (1) Emson's complaint, (2) Amazon's independent investigation, and (3) OJC's own actions.

A decision from the Ohio Court of Appeals combines these three causes into one case and further supports our decision here. *See Hetmanski v. Doe*, No. 2016-T-0123, 2017 WL 3480363 (Ohio 11th Dist. Aug. 14, 2017). The plaintiff in *Hetmanski* was a social worker employed by a hospital. *Id.* at \*1. She did not follow the hospital's policies in an adoption proceeding and the adoption fell through. *Id.* at \*2. The director of an adoption agency complained to the hospital, and at the same time, other hospital employees also complained. *Id.* at \*1. *Id.* So the hospital investigated. *Id.* at \*2. It found that the plaintiff, according to her own documents, did not follow hospital policy, and fired her. *Id.*

The social worker sued the director of the adoption agency. *Id.* She claimed that his complaint to the hospital was false and constituted tortious interference with employment. *Id.* The court of appeals disagreed. It held that the social worker could not establish that the director's complaint was the proximate cause of her firing. *Id.* at \*5.

In coming to this conclusion, the court looked at three facts that broke the causal chain. First, it found that other employees expressed concern to the hospital. *Id.* at \*5. So even if the defendant's complaint led to the hospital's investigation, it was not the only reason for the

investigation. *Id.* Second, the hospital conducted an independent investigation, and the defendant was not involved in it. *Id.* Finally, the court noted that during the investigation, the plaintiff's own documents showed that she did not follow the hospital's policy. *Id.* So based on the intervening acts of third parties (the employees and the hospital's investigation), as well as the plaintiff's own documents, the court held that there was no proximate cause.

The analogy here is obvious. Like the employees in *Hetmanski*, Emson independently complained to Amazon. Like the hospital, Amazon conducted its own independent investigation. And, like the social worker, OJC's own conduct led to the deactivation of its account. That was enough for the Ohio Court of Appeals to find no proximate cause exists and it's enough for us here too.

For these reasons, we hold that OJC cannot establish proximate cause because three intervening causes—Emson's independent complaint, Amazon's independent investigation, and OJC's own response to Amazon—broke the causal chain and relieved NOCO of any liability.

C.

OJC makes one final argument based on statistics. In its view, the district court correctly recognized that there were three equally likely explanations for why Amazon deactivated its account. These were that Amazon could have deactivated OJC's account because of (1) NOCO's complaint alone, (2) Emson's complaint alone, or (3) both of their complaints together. As OJC sees it, this means that in two out of three scenarios (or 66%), NOCO was involved. And from this statistical fact alone, OJC concludes that it is more likely than not that NOCO was involved. We aren't convinced.

To be fair, the district court's seeming conclusion that Emson alone likely motivated Amazon's actions is probably an impermissible inference. After all, Amazon's email cites both NOCO and Emson as reasons for the deactivation. So, without more, we can't say if Emson alone is responsible. But we don't think that's what the district court meant here anyway. The court viewed the record as lacking any evidence that NOCO motivated Amazon either alone or in part— aside from those scenarios being two of three equally likely possibilities. *See NOCO Co. v. OJCommerce LLC*, No. 1-19-cv-02298, 2021 WL 1788578, at \*3 (N.D. Ohio May 5, 2021)

("Contrary to OJCommerce's assertions, these emails are insufficient to establish that Amazon temporarily removed OJCommerce because of the NOCO complaint."). So the district court found that the email wasn't enough evidence to get to the jury. And we agree.

But even if the district court's opinion can be taken to endorse a 66% probability that NOCO was involved, OJC's claim still fails. Why? Because of the general view in the law that probabilistic evidence alone can't carry a plaintiff's burden. *See, e.g.*, *Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 360 (7th Cir. 1998) (Posner, J.); *see also* Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 Stan. L. Rev. 1477, 1508-09 (1999).

Indeed, the question of pure statistical evidence conjures visions of the classic Blue Bus hypothetical, which is a variation of the Massachusetts Supreme Court's opinion in *Smith v. Rapid Transit Inc.*, 58 N.E.2d 754 (Mass. 1945). *See* Michael S. Pardo, *The Paradoxes of Legal Proof: A Critical Guide*, 99 Boston U. L. Rev. 223, 237 (2019); Posner, *An Economic Approach*, *supra*, at 1508-09. Imagine the following: suppose a plaintiff is hit by a bus. We don't know anything about the bus, but we do know that Blue Bus Company owns 75 percent of the buses in town and Red Bus Company owns 25 percent. The plaintiff sues Blue Bus Company and offers no evidence, just the statistics. Does the case go to the jury? Most legal authorities say "no." *Howard*, 160 F.3d at 360; *see also Galvin v. Eli Lilly and Co.*, 488 F.3d 1026, 1034-35 (2007) (explaining that courts "usually reject the argument" that statistical evidence alone is enough); Richard W. Wright, *Causation, Responsibility, Risk, Probability, Naked Statistics, and Proof: Pruning the Bramble Bush by Clarifying the Concepts*, 73 Ia. L. Rev. 1001, 1050-51 (1988). And that's what the Massachusetts Supreme Court held in *Smith*, too. *See* 58 N.E.2d at 470. It explained that "it was not enough" for "the mathematical chances [to] somewhat favor the proposition that a bus of the defendant caused the accident." *Id.*

It's true, academics have debated the use of statistics given that some commentators, including Judge Posner, have recognized that all evidence is probabilistic in some sense. *See Howard*, 160 F.3d at 360; *see also* Posner, *An Economic Approach*, *supra*, at 1508; *compare* Wright, *supra*, at 1001, 1075 (rejecting use of statistical evidence and arguing that "[t]here should not be liability . . . when it has not been established that the defendant behaved tortiously"), *with* Daniel Shaviro, *Statistical-Probability Evidence and the Appearance of Justice*, 103 Harv. L. Rev.

530, 531 (1989) (arguing that the *Smith* rule rejecting pure statistical evidence "is not convincing") *and* Sam Fox Krauss, *Against the Alleged Insufficiency of Statistical Evidence*, 47 Fla. St. U. L. Rev. 801, 802 (arguing that "statistical evidence should be sufficient, on its own, for conviction in a criminal trial or a ruling a civil trial").

And it's also true that some courts, in some special circumstances, have let plaintiffs rely on statistics alone. *See Sindell v. Abbott Lab'ys*, 607 P.2d 924 (1980); *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984); *see also Howard*, 160 F.3d at 360. But in those mass-tort cases, particularized evidence was unavailable. Not so here. We have no reason to believe that particularized evidence from Amazon, that could have added to the statistical speculation, would not have been available here. In fact, OJC itself has identified a source from Amazon who it claims could have testified.[6] But the record contains no testimony from him. And OJC has presented no other evidence to support its statistical argument.

The concerns with using only statistical evidence are summarized in the following dilemma. Just because OJC is relying on pure statistical evidence—that there is a 66% probability that NOCO was responsible—doesn't mean that there is, in fact, a 66% probability that NOCO was responsible. *See Howard*, 160 F.3d at 360. Rather, it goes to show that either OJC (1) "investigated and discovered that" NOCO wasn't responsible, or (2) that it "simply has not bothered to conduct an investigation." *Id.* If it's the first, then OJC cannot carry its burden of proof against NOCO. If it's the second, then OJC's claim also fails. That's because "[a] court shouldn't be required to expend its scarce resources of time and effort on a case until the plaintiff has conducted a sufficient investigation to make reasonably clear that an expenditure of public resources is likely to yield a significant social benefit." *Id.* This is, after all, why the plaintiff has the burden of proof in the first place. *Id.* We think this case likely falls within this latter category. And that's why there is no evidence in the record from Amazon that supports OJC's statistical evidence.

---

[6]OJC states that "discovery was ongoing during summary judgment briefing." (Appellant's Br. at 27-28.) While it hints at it, OJC doesn't argue that summary judgment was premature. In any event, if OJC needed more time for discovery, it should have filed a motion for more discovery under Fed. R. Civ. P. 56(d). But OJC didn't do that here.

V.

Because NOCO was not the proximate cause of OJC's injuries, we **AFFIRM**.